IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| THAI LOR,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States; DAVID EASTERWOOD, in his official capacity as Acting Director, St. Paul Field Office Immigration and Customs Enforcement, and WARDEN of the Freeborn Adult Detention Center,<br><br>Respondents. | **0:26-cv-01557-SHL-SGE**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION.

Petitioner is a native of Thailand and a citizen of Laos who has been in the United States since 1990. Petitioner has a final removal order and is scheduled to be removed to Laos imminently. He filed an Emergency Petition for Writ of Habeas Corpus, which prompted the Court to enter an order temporarily enjoining Respondents from removing him. (ECF 1; ECF 5.) Having now fully reviewed the record, however, the Court must DENY his Petition for Writ of Habeas Corpus.

## II. BACKGROUND.

Petitioner is a native of Thailand and a citizen of Laos. (ECF 1, ¶ 1; ECF 8, ¶ 4.) He arrived in the United States in 1990 as a refugee. (ECF 1, ¶ 1; ECF 8, ¶ 4.) In January 1992, Petitioner was adjusted to Lawful Permanent Resident status. (ECF 1, ¶ 13; ECF 8, ¶ 5.) On August 12, 1997, he was convicted of murder in the second degree and sentenced to 270 months' imprisonment. (ECF 1, ¶ 14.) In February 1998, INS served Petitioner with a Notice to Appear charging removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). (Id.; ECF 8, ¶ 7.) On June 15, 2009, an immigration judge in Bloomington, Minnesota ordered Petitioner removed from the United States to Laos or in the alternative, Thailand. (ECF 1, ¶ 14; ECF 8, ¶ 8; ECF 8-2.) Petitioner waived his opportunity to appeal. (ECF 8-2.) In March 2012, Petitioner was turned over to the custody of U.S. Immigration and Customs Enforcement ("ICE") by from the Minnesota Department of Corrections. (ECF 8, ¶ 9.) In June 2012, he was released on an order of supervision.

(ECF 1, ¶ 16; ECF 8-3.) Since his release, Petitioner has no criminal record and has maintained strong ties with the community. (ECF 1, ¶¶ 16–24.) He has a common law spouse and three children, one of which has serious medical needs. (Id., ¶ 16.) Beginning in July 2012, Petitioner attended monthly check-ins with ICE. (Id., ¶ 17.) He attended every check-in other than inadvertently missing one in October 2024. (Id.)

Petitioner was encountered by immigration officers on December 13, 2025, and was arrested pursuant to a warrant. (Id., ¶ 25; ECF 8, ¶ 11.) Petitioner was presented with a Notice of Revocation of Release which noted that due to a change in circumstances "removal from the U.S. is now significantly likely in the reasonably foreseeable future." (ECF 8-4.) It also stated that "pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time." (Id.) That day, ICE conducted an informal interview where Petitioner was given an opportunity to respond to the reasons for revoking his release. (ECF 8, ¶ 12; ECF 8-5.) Petitioner did not respond to the interviewing officer. (ECF 8-5.) While Laos has not historically accepted the repatriation of its citizens, they have recently changed that policy. (ECF 8, ¶ 14.) Immigration officials requested a travel document from Laos on December 19, 2025. (Id.) On January 9, 2026, a travel document was issued for Petitioner by the Lao People's Democratic Republic. (Id.; ECF 8-6.) The travel document is valid for 90 days. (ECF 8-6.) The deportation officer in Petitioner's case attests that he "will be manifested on an upcoming scheduled charter flight." (ECF 8, ¶ 14.)

On February 20, 2026, Petitioner filed this petition for habeas corpus. (ECF 1.) He alleged that his deportation was scheduled for February 26, 2026. (ECF 1, ¶ 28.) The Court issued an Order to Show Cause enjoining Petitioner's deportation pending resolution of his habeas petition. (ECF 5.) Petitioner alleges that he is afraid to return to Laos because of the government's history of persecuting the Hmong people. (ECF 1, ¶ 26.) On February 25, Petitioner applied for a pardon which, if granted, may entitle him to new removal proceedings and the restoration of his lawful permanent resident status. (ECF 1, ¶ 27; ECF 9-1.) He seeks relief pursuant to the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231. (ECF 1, p. 8.)

## III. LEGAL STANDARD.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn.

2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs*., No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

**IV. LEGAL ANALYSIS.**

*A. Petitioner Has Not Established a Violation of His Due Process Rights.*

The parties' submissions presume that Petitioner's case is governed by *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), which establishes that the Government may detain an alien who has a final order of removal for "the initial 90 days allowed by 8 U.S.C. § 1231(a)(2), and thereafter only for the period reasonable necessary to secure the alien's removal." *Bah v. Cangemi*, 548 F.3d 680, 683 (8th Cir. 2008). "It is presumptively reasonable for the government to detain the alien for six months or less, but after that time the government must show a significant likelihood of removal in the reasonably foreseeable future" ("SLRRFF"). *Id.* "The *Zadvydas* decision 'does not mean that every alien not removed must be released after six months,' but rather that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* "A habeas petitioner must wait until the presumptively reasonable six-month detention period has passed before bringing a habeas petition challenging that detention." *Brian B. v. Tollefson*, No. 24-cv-2884, 2024 WL 4029657, at *1 (D. Minn. July 26, 2024).

Petitioner's case represents the other side of the *Zadvydas* coin. In *Zadvydas*, the petitioners were challenging indefinite detention following the issuance of the final order of removal. 533 U.S. at 684–86. While *Zadvydas* adopted the SLRRFF standard to govern the permissible scope of detention for such individuals, it did not explain whether or when a person could be re-detained after having been released. The Department of Homeland Security ("DHS") later promulgated "special review procedures" for people in this position. *See* 8 C.F.R. § 241.13; *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for . . . those who are re-detained upon revocation of their supervised release."). Section 241.13(i)(2) states: "The Service may revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien

may be removed in the reasonably foreseeable future." Thus, "ICE's decision to re-detain a noncitizen like [Petitioner] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)).

"[T]he burden-shifting framework from *Zadvydas* does not apply here." *Yan-Ling X. v. Lyons*, --- F. Supp. 3d ----, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). "[W]hen ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" *Id.* at 4 (quoting *Escalante*, 2025 WL 2206113, at *3); *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). The Court agrees with this growing consensus of cases that "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." *Yan-Ling X.*, 2025 3123793, at *4 (quoting *Escalante*, 2025 WL 2206113, at *3). Consequently, the Court must determine whether Respondents have met their burden to show a change in circumstances showing that there is now a significant likelihood of removal in the reasonably foreseeable future.

Respondents have met this burden. Petitioner's deportation was stymied by the longstanding policy of Laos to decline repatriation. (ECF 8, ¶ 14.) This policy has recently changed, and Laos has begun issuing the travel documents necessary to effectuate repatriation. (Id.) Indeed, Laos has issued travel documentation for Petitioner himself. (Id.; ECF 8-6.) Because these documents are only valid for "90 days from the date of issue," the Government has an incentive to remove within the next month or two. (ECF 8-6.) To that end, Petitioner himself believes removal is imminent and would have occurred on February 26, 2026, if not for this Court's order. (ECF 1; ECF 5.) Under these circumstances, the Court has no authority to stop Petitioner's deportation. His petition for writ of habeas corpus is therefore DENIED.

*B. Petitioner Is Not Owed Additional Process.*

Petitioner argues that "Due Process requires a pre-deprivation hearing before a neutral arbiter" and that "[t]he perfunctory, post-detention 'interview' conducted by an ICE officer does not meet this standard." (ECF 9, p. 4.) Section 241(i)(2) allows the revocation and re-detention of those under an order of supervised release if "the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Section 241(i)(3) provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

Here, ICE made an individualized determination that there were changed circumstances that made it significantly likely that Petitioner would be removed in the reasonably foreseeable future. (ECF 8-4.) The parties agree that an informal interview took place on December 13, 2025, the same day Petitioner was taken into custody. (ECF 8, ¶ 12; ECF 8-5; ECF 9, p. 4.) Petitioner was given an opportunity to respond to the reasons for revoking his release. (ECF 8, ¶ 12; ECF 8-5.) Respondents assert—and Petitioner does not contest—that he did not offer any oral or written evidence or information during this meeting. (ECF 8-5; ECF 9.) Petitioner's only complaint is that he "was not told that an interview was being conducted to test the legality of his detention" and that he "believed he would have another opportunity to express an objection to being detained." (ECF 9, p. 4.) However, the Notice of Revocation served on Petitioner prior to the interview stated, "You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely." (ECF 8, ¶ 11; ECF 8-4.) This put Petitioner on notice to a sufficient degree to satisfy the requirements of 8 C.F.R. §§ 241.13 and 241.4.

Petitioner was not entitled to anything more in terms of process. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. "At the same time, however, [the Supreme Court] has recognized detention during

deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* While Petitioner has a liberty interest against indefinite detention, *Zadvydas*, 533 U.S. at 696, the informal interview guaranteed by the regulation and provided to him here is sufficient to satisfy his due process rights. *Alcivar Lorenzo v. Raycraft*, No. 1:26-CV-77, 2026 WL 369349, at *6 (W.D. Mich. Feb. 10, 2026) ("8 C.F.R. § 241.4 and § 241.13 . . . were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" (citation omitted)); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands."); *compare Li v. Bondi*, No. CIV-25-1480, 2026 WL 475133, at *2 (W.D. Okla. Feb. 19, 2016) ("A majority of district courts have granted habeas relief, finding that a violation of one or more federal regulations amounts to a due process violation.").

Finally, it is not relevant to the Due Process analysis that the Petitioner filed an application for a pardon the day before he was scheduled to be removed. He has not identified, and the Court is not aware of any authority establishing that deportation should be interrupted simply because an otherwise-deportable person has applied for a pardon. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) ("In terms of the Due Process Clause, [Petitioner's] expectation . . . that he will be pardoned is no more substantial than an inmate's expectation that he will not be transferred to another prison; it is simply a unilateral hope. A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" (citation omitted)).

The Court is sympathetic to the impact deportation will have on Petitioner, his family, and his community. Respondents have, however, followed the law, and thus there is no basis on which the deportation can or should be stopped.

## V. CONCLUSION.

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is DENIED. The temporary restraint on Petitioner's removal is now lifted, and Respondents may now proceed with the removal process in accordance with the law. The Clerk of Court is directed to enter judgment in favor of Respondents and against Petitioner and close this case.

**IT IS SO ORDERED.**

Dated: March 9, 2026

_______________________________
Stephen H. Locher
UNITED STATES DISTRICT JUDGE